J-S40028-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF: H.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: V.B., SR. AND M.B., | : | |
| NATURAL PARENTS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 431 WDA 2019 |

Appeal from the Order Entered March 7, 2019
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s):  32-18-0546

| | | |
|---|---|---|
| IN RE: ADOPTION OF V.B., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: V.B., SR. AND M.B., | : | |
| NATURAL PARENTS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 432 WDA 2019 |

Appeal from the Order Entered March 7, 2019
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s):  32-18-0545

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: V.B., SR. AND M.B., | : | |
| NATURAL PARENTS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 433 WDA 2019 |

Appeal from the Order Entered March 7, 2019
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s):  32-18-0544

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI[*], J.

MEMORANDUM BY McLAUGHLIN, J.:                    FILED SEPTEMBER 16, 2019

M.B. ("Mother") and V.B. ("Father") (collectively "Parents") appeal from the orders involuntarily terminating their parental rights to minor children, M.B., born in August 2014, V.B., born in March 2016, and H.B., born in June 2017 (collectively, "the Children"). Parents' counsel has filed a motion to withdraw and a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and Commonwealth v. Santiago, 978 A.2d 349 (Pa. 2009). We affirm the orders of the trial court and grant counsel leave to withdraw.

The facts, as gleaned from the trial court's opinion and from the certified record, are as follows. Parents have consistently struggled with providing food and housing for the Children. The Indiana County Children and Youth Services ("Agency") first became involved with Parents and the Children in September 2017, after receiving a report from Cambria County, that a file had been previously opened regarding Parents. N.T., 2/11/19, at 35. The Agency first visited Parents' home on October 17, 2017, at which time caseworker, Amanda Wadsworth, registered significant concerns regarding Parents' lack of supervision of the Children, as well as the discovery of expired formula and a general lack of food. Id. at 36-38. Due to these concerns, the Agency made four more visits during the following three weeks and purchased food and formula for the Children on six separate occasions. Id. at 38-39. However, the Agency noted that the purchased food was often missing from the home

_____

[*]   Retired Senior Judge assigned to the Superior Court.

during subsequent visits. Id. Ultimately, on November 6, 2017, the Agency held a rapid safety conference and took emergency custody of the Children. Id. at 40-41.

Thereafter, the trial court conducted a Shelter Care Hearing and found that returning the Children to Parents would not be in the Children's best interests. The Agency filed a dependency petition on November 13, 2017 and the trial court conducted a hearing regarding the same on November 16, 2017. The Court found the Children to be dependent and ordered them to remain in foster care. As required, the trial court subsequently held permanency review hearings approximately every six months until December 2018. After the conclusion of each of these hearings, the trial court ordered the Children to remain together in foster care. In June 2018, the court ordered the Agency to transfer the Children to the foster home of J.P. and W.P. ("current foster parents"), where the Children have thereafter remained.

In November 2018, the Agency filed a petition for the involuntary termination of Parents' parental rights, averring that termination was appropriate pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2) and (5). The trial court appointed Joelyssa Johnson, Esquire to serve as both guardian ad litem (GAL) and legal counsel for the Children because, given the young age of the

Children, the trial court found no conflict between the Children's best interests and legal interests.[1]

In February 2019, the trial court conducted a termination hearing. Attorney Johnson, in her role as GAL, testified that she believed it was in the Children's best interests that the court terminate Parents' parental rights. The Agency presented the testimony of Dr. Carolyn Menta, a licensed clinical psychologist, Amanda Wadsworth and Rachel Pommer, Agency caseworkers, and Kaitlyn Myers, a family resource specialist with Justice Works Youth Care ("JWYC"). Dr. Menta testified regarding parental and psychological evaluations she performed on Parents and current foster parents in July, September, and October 2018. N.T. at 8-17. Dr. Menta reported that Parents have both struggled with substance addiction for several years. Id. at 14. In addition, Dr. Menta noted that Father has been diagnosed with Bipolar Disorder and explained that he also had impulsivity/anger management issues. Id. at 15-17. Dr. Menta detailed Father's anger issues by listing examples when Father had behaved recklessly such as driving a car over one hundred and twenty miles an hour and hiding under the subfloor of his home for several hours. Id.

Dr. Menta observed Parents interact with the Children during a one-hour visit in her office. Id. at 17-21. She testified that she noticed the Children were not affectionate or engaged with Parents and that the Children largely

_____

[1] See In re T.S. 192 A.3d 1080 (Pa. 2018) (holding that a GAL may also serve as a child's legal counsel where there is no conflict between a child's legal and best interests such as in the case where the child is too young to express a legal preference.)

avoided eye contact with Parents. Id. To the contrary, Dr. Menta found that the Children are flourishing with current foster parents and have begun to catch up developmentally under their care. Id. at 22. Therefore, Dr. Menta opined in her written report that the Children's bond with Parents appears minimal and the benefits of severing the bond would far outweigh any negative impact.

Agency caseworker Amanda Wadsworth testified that she had personally visited Parents home during the above-referenced visits from September 2017-November 2017 and was very concerned about the Children's safety. Id. at 37. Agency caseworker, Rachel Pommer, who became involved with the case in December 2017, testified regarding Parents' former involvement with both the Westmoreland and Cambria counties' offices of Children and Youth Services. Id. at 58-59. Pommer testified that Father has struggled with an addiction to prescription pain medication and heroin and has engaged in outpatient treatment for his addiction, but has been discharged as noncompliant several times. Id. at 66-68. Mother also has struggled with addiction to opiates. Although she successfully completed inpatient drug treatment in early 2018, she was subsequently discharged from outpatient treatment in August 2018, for noncompliance. Id. at 62-66.

Further, Pommer reported that although oldest child M.B. was developmentally delayed when first removed from Parents' care, she was thriving with current foster parents. Id. 73-74. Pommer expressed concern that V.B.'s diagnosed Torticollis had largely gone untreated while he was in

Parents' care. Id. Parents were also recommended, by the Agency, to complete mental health treatment. However, they both waited 10 months to act on the recommendation, attended an intake evaluation, but failed to attend any additional appointments. Id. at 81.

Also testifying on behalf of the Agency was Kaitlyn Myers, a family resource specialist with JWYC. Myers testified regarding services JWYC provided to Parents prior to the Children's removal, including assistance with food, budgeting, and employment education. Id. at 43-55. JWYC also provided nurturing parenting instruction, life skills, and anger management. Id. JWYC facilitated visits between the Children and Parents one time per week for two hours, which Parents did attend. Id.

In addition, Parents, jointly represented by Katrina Kayden, Esquire, each testified at the termination hearing. Father stated that he was continuing treatment for his substance abuse and felt he had it under control. Id. at 86-88. He explained that he was seasonally employed as a landscaper but found it difficult to find other work due to his inability to drive. Id. at 94-95, 121-122. He imparted that he felt the Children were wrongly removed from Parents' care and did not want his parental rights terminated. Id. at 110-111. Likewise, Mother testified that she had recently restarted getting help for her substance abuse and mental health issues. Id at 134. She also responded to the Agency's claims by reporting that she felt V.B.'s Torticollis did not require any further treatment when the Children were in her care. Id. at 134.

However, when asked if she currently had the capacity to take care of the Children, Mother answered "sort of." Id. at 134.

Ultimately, the trial court granted the Agency's petition and terminated Parents' parental rights via separate orders, entered on March 7, 2019, for each of the Children. In separate, but substantially similar opinions issued on the same date, the court terminated Parents' rights pursuant to 23 Pa.C.S.A. § 2511(a)(5) & (b). The court explained that while Parents' did not exhibit a "defining characteristic" that prevents them from parenting the Children, their continued struggle "with housing, food, poverty, parenting, substance abuse, anger management, and mental health" remains substantially unchanged since the Children were removed from their home, despite the multitude of services offered by the Agency. Tr. Ct. Op., 3/7/19, at 14. Thus, the trial court found that the conditions which led to the placement of the Children continued to exist for a period exceeding six months and therefore termination of the Parents' parental rights was appropriate under Section 2511(a)(5). Likewise, the court concluded that termination of the Parents' parental rights was appropriate pursuant to Section 2511(b) due to the testimony establishing that the Children had only a minimal bond with Parents while thriving with their current foster parents.

At Mother's request, Parents' counsel filed a timely Notice of Appeal. As noted above, counsel thereafter filed an Anders brief with this Court and a Motion to Withdraw as Counsel. Before assessing the merits of Parents' appeal, we must first examine counsel's request to withdraw. See

Commonwealth v. Orellana, 86 A.3d 877, 879 (Pa.Super. 2014). Counsel who wishes to withdraw must file both an Anders brief in this Court and provide a copy of that brief to the client. Id. at 880. The brief must:

> (1)    provide a summary of the procedural history and facts, with citations to the record;
>
> (2)    refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)    set forth counsel's conclusion that the appeal is frivolous; and
>
> (4)    state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Id. (quoting Santiago, 978 A.2d at 361.

Counsel must also send a letter "that advises the client of his right to: '(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the Anders brief.'" Id. (quoting Commonwealth v. Nischan, 928 A.2d 349, 353 (Pa.Super. 2017)).

Following our assessment of counsel's request to withdraw, we "must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." Commonwealth v. Flowers, 113 A.3d 1246, 1250 (Pa.Super. 2015); see, e.g., In re X.J., 105 A.3d 1, 4-6 (Pa.Super. 2014) (denying application to withdraw where court

found, on independent review pursuant to Flowers, a meritorious issue overlooked by counsel).

Here, counsel's brief contains the required Anders elements. Counsel has restated the facts of the case at reasonable length; referred to anything in the record that could arguably support Parents' appellate issues; has stated her belief that the appeal is frivolous; and has duly articulated the facts and law that have led to her conclusion that the appeal is frivolous. Orellana, 86 A.3d at 879. In addition, counsel sent a letter to Parents explaining their rights, including their rights to raise issues with this Court pro se in support of their respective appeals. Id. at 880. Neither Mother nor Father has submitted any additional filings to this Court. We therefore turn to an independent review of the merits of the appeal and the record as a whole. Flowers, 113 A.3d at 1250.

Parents' issues, as presented by counsel, are:

1. Did the [trial] court commit an abuse of discretion or an error of law when it concluded that the agency established grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(5)?

2. Did the [trial] court commit an abuse of discretion or an error of law when it concluded that termination of rights was appropriate and in the children's best interest pursuant to 23 Pa.C.S. § 2511(b)?

Anders Br. at 6.

When reviewing orders terminating parental rights, we "accept the findings of fact and credibility determinations of the trial court if they are

supported by the record." In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012). If the record supports those findings, we then review the decision "to determine if the trial court made an error of law or abused its discretion." Id. We will reverse a decision "for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." Id.

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion standard to termination decisions:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

Id. at 826-27 (citations omitted).

A trial court may terminate parental rights only after finding grounds for termination existed under Section 2511(a) and that termination is in the child's best interest under Section 2511(b). Here, we conclude that the trial court properly terminated Parents' parental rights pursuant to Section 2511(a)(5).

Section 2511(a)(5) provides:

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

To terminate parental rights pursuant to Section 2511(a)(5), the moving party must produce clear and convincing evidence that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. In re Adoption of M.E.P., 825 A.2d 1266, 1273-74 (Pa. Super. 2003).

Parents' first issue concerns the contention that the trial court erred by terminating Parents' parental rights under Section 2511(a)(5). However, a review of the testimony presented at trial reveals that the trial court had ample

evidence to support the termination of Parents' parental rights. Dr. Menta's testimony showed that Parents have consistently struggled with substance abuse and have not been consistent in getting the help they need to overcome their addictions. Further, neither Mother nor Father has made consistent efforts toward obtaining the recommended mental health counseling. Agency caseworkers Wadsworth and Pommer also elucidated about Father's anger management issues in regards to his confrontational and verbally aggressive behavior with Agency staff. Moreover, family service specialist Myers detailed the extensive services offered to Parents, yet Parents were unable to remedy the conditions that led to placement of the Children.

Thus, we conclude that the trial court had ample evidence from which to find that the conditions that required the Children to be removed from Parents care have remained longer than six months post-removal, Parents have been unable or unwilling to remedy them in spite of the availability of services, and thus the best interests of the Children would be served by the termination of Parents' parental rights. Therefore, we hold that the trial court properly terminated Parents' rights pursuant to Section 2511(a)(5).

Turning to Parents' second issue submitted for appellate review, we examine whether the termination of Parents' parental rights is in the Children's best interests. If the trial court has concluded that a parent's parental rights should be terminated under Section 2511(a), then the court must determine whether, considering the child's developmental, physical, and emotional needs and welfare, termination is in the best interests of the child. 23 Pa.C.S.A. §

2511(b); S.P., 47 A.3d at 830. In conducting this analysis, the court should examine the emotional bond between parent and child, with close attention to the effect on the child of permanently severing any such bond.

Here, the trial court aptly considered Dr. Menta's assessment, following observation, that the Children had only a minimal bond with Parents and the Children demonstrated "significant anxiety during and after visits with [Parents]." Tr. Ct. Op. at 17. Conversely, Dr. Menta noted that the Children have thrived in foster care and have made strides to catch-up developmentally. Thus, Dr. Menta opined that the benefits of terminating Parents' rights would far outweigh any negative impact on the Children. The trial court agreed with Dr. Menta's assessment and found that the termination of Parents' parental rights would serve the Children's best interests as required for termination under Section 2511(b). Further, Attorney Johnson, in her role as GAL, also testified that she believed that the termination of Parents' parental rights was in the Children's best interests. We concur and conclude that the trial court did not abuse its discretion in determining that the termination of Parents' parental rights was in the best interests of the Children as required under Section 2511(b).

In sum, we conclude that Parents have presented no non-frivolous issues. In addition, we have reviewed the certified record consistent with Flowers, 113 A.3d at 1250, and have discovered no additional arguably meritorious issues. We therefore grant counsel's Motion to Withdraw and affirm the orders of the trial court.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/16/2019